[No. 21763.   Department Two.   January 28, 1930.]

EVA L. BRAINERD, *Respondent*, v. CHARLES H. STEARNS, *Appellant*.[1]

*Roberts, Skeel & Holman* and *Frank Hunter,* for appellant.

*Lundin & Barto* and *Wm. F. Devin,* for respondent.

MILLARD, J.—This is an action to recover for personal injuries sustained by a guest in an automobile accident. The trial of the cause to the court and a jury resulted in a verdict against the defendant. Defendant's challenge to the sufficiency of the evidence at the close of plaintiff's case and his motions for directed verdict and judgment notwithstanding the verdict were denied. From a judgment on the verdict, the defendant appealed.

Appellant invokes the rule that, as host, he owed to the respondent, as his guest, only the duty of slight care, and contends that he was not guilty of gross negligence such as would create a liability under the rule in this state.

"Under the rule in this state, whatever it may be in

[1] Reported in 284 Pac. 348.

other states, as announced in *Heiman v. Kloizner,* 139 Wash. 655, 247 Pac. 1034; *Saxe v. Terry,* 140 Wash. 503, 250 Pac. 27, and *Klopfenstein v. Eads,* 143 Wash. 104, 254 Pac. 854, 256 Pac. 333, it cannot be held that the injury was wanton or the result of gross negligence on the part of the respondent. As to an invited guest one is required to exercise only slight care and will be liable only for gross negligence." *Blood v. Austin,* 149 Wash. 41, 270 Pac. 103.

We held that, under the facts in each of the above-cited cases, there was no question of gross negligence for the jury; that the court could conclude, as a matter of law, that the defendant was not guilty of gross negligence. The only common ground of those cases and the case at bar is that they were host-guest cases. In each of those cases, the defendant host was the driver of the automobile that was wrecked. In the case at bar, the host-owner of the automobile was not the driver; his negligence consisted of interfering with a competent driver to whom he had intrusted the operation of the car.

In the case at bar, the jury were warranted in finding from the evidence submitted to them that the appellant was guilty of gross negligence. The facts are as follows:

On February 13, 1927, Miss Rosamond Brainerd, with whom appellant had been keeping company for some time and who is now his wife, Mrs. Waters and respondent, Mrs. Brainerd, now the appellant's mother-in-law, accepted the appellant's invitation to accompany him in his Star sport touring car on a trip from Seattle to Snoqualmie Falls and return. Returning from the falls in the late afternoon of that day, the appellant installed Miss Brainerd as driver of the automobile. Appellant sat in the front seat to the right of Miss Brainerd, then the operator of the car.

Mrs. Waters and Mrs. Brainerd occupied the rear seat, the latter sitting directly behind the appellant. Miss Brainerd is a competent driver, having driven the appellant's automobile approximately one thousand miles.

The accident occurred near Issaquah on the Sunset highway, a paved road twenty feet wide. The party had proceeded several miles at the rate of twenty-five miles an hour, when they came. to a curve around a hill. The highway at this point, in the direction in which the party was going, is slightly down-grade. On the left side of the highway, is a high bank. On the right side of the highway is a ravine seventy-five feet in depth. No guard rail was along either side of the highway. Because of ice or frost on the paving, the car suddenly skidded. While skidding, the car angled across the highway, headed toward the left side of the road. An automobile, two or three hundred feet distant, was approaching from the opposite direction coming up-grade. Miss Brainerd did not lose her grip on the steering wheel. She continued her efforts to steer the car and, at the same time, alternately applied and released the foot brakes.

Appellant Stearns reached for the emergency brake and, at the same time, seized the steering wheel and turned it suddenly in an endeavor, he contends, to bring the car, which was out of control and heading into the bank on the left side of the highway, back to the right side of the highway. The result was that the automobile changed its course, recrossed to the right side of the highway and plunged into the ravine, seriously injuring the respondent. Miss Brainerd testified that the steering wheel was jerked suddenly to the right by appellant Stearns:

"Q. As you approached this point what happened? A. We went around this curve, and the car began to

skid. I was headed toward the bank on the left-hand side, and Mr. Stearns grabbed the car and turned it suddenly to the right side and it headed down toward the gully on the right side. . . . Q. After you had skidded the length of the street, or the width of the street, the length of the width of the street, what happened? A. Mr. Stearns took it and jerked it suddenly over this way (illustrating); we went right down, and turned around so we were headed right down, nose down along here; he turned it suddenly and we went down like this (illustrating). . . . Q. Did you have hold of the wheel at the time Mr. Stearns grabbed it? A. Yes, sir, I did. Q. When Mr. Stearns leaned over and grabbed the wheel, what did he do? A. He jerked it suddenly to the right. Q. When he jerked that steering wheel suddenly to the right, what happened? A. We went right down over the bank; the car turned and went right over the bank.''

Mr. Stearns likewise testified that he grabbed the steering wheel, which Miss Brainerd continued to hold until the car went off the highway into the ravine:

''Q. Do you know whether or not Miss Rosamond let go of the wheel at any time before you tipped over? A. Well, she was trying to guide the car. I imagine now as I think of it. Q. She was holding the wheel all the time you were also trying to get the car on the other side of the road. A. Yes, she was trying to direct it. Q. Were you both trying? A. Well, I mean to say when—I don't imagine her hands were off the wheel when I took it. Q. Did you say you were both trying to get the car on the right hand side of the road? A. No, that is why I took it. I did not think she was going to bring it back, you see. I took it.''

In *Borys v. Christowski*, 9 Sask. L. R. 181, the plaintiff and three other women went for a drive with the defendant in his automobile. The defendant took his hands off the steering wheel just before the car overturned and while it was traveling at a fairly high rate of speed, leaving the car without any guidance what-

ever. While the car was thus without guidance, it swerved off the road and the defendant, in attempting to sharply turn it back to the road, caused it to upset with the resultant injury to the plaintiff guest. The court said:

"The trial judge in this case found the defendant guilty of negligence. The negligence was the taking of his hands off the steering wheel of his automobile while driving at a high rate of speed with the plaintiff and three other women and that this action on his part was the cause of the accident. The evidence was contradictory, but the weight of the evidence was in favor of the plaintiff. We should not, therefore, interfere with this finding. As to what the defendant is found to have done—take his hands off the steering wheel when the automobile was moving at a high rate of speed—it was, in my opinion, gross negligence and renders the defendant liable to plaintiffs for the injuries received while driving with him by his consent."

Miss Brainerd was a competent driver. The appellant had placed her at the steering wheel and invested her with full authority to operate the automobile. To take the hands from the steering wheel while the car was traveling at a fairly high rate of speed and then to grasp the wheel in an effort to right the car when it swerves because the car is left without guidance, was held in *Borys v. Christowski, supra,* to be gross negligence. The appellant knew, or to him is imputed the knowledge, that the probable consequence of this conduct would be to cause an accident. Such disregard of consequences warranted the jury in finding the appellant guilty of gross negligence. To remove the hands from the steering wheel, leaves the car without guidance.

If two drivers attempt to drive the same car, can it be said that the car is being guided? Until one or the other of the contestants wrests control of the wheel

from the other, the course of the car will be erratic. That the rear seat driver is an irritant, all automobile drivers will admit. What shall be said of one sitting next to the operator of the car, even though such person be the owner of the automobile, if he endeavors to divide the role of driver with a competent operator of the car, as was Miss Brainerd? Such a person menaces not only his own life and the lives of his guests, but recklessly places in peril the lives of persons in other cars upon the highway. Though appellant was the owner of the car and honestly believed that his judgment, skill and experience were superior to those of the driver, and should be marshaled to bring to safety his property, his guests and himself, these were facts for the jury to consider as to the question whether, under the circumstances, appellant was justified in attempting to depose the driver at that time.

It would have been as prudent for both Miss Brainerd and the appellant to have taken their hands from the steering wheel as for each to struggle with the other for possession of that wheel. A car is without guidance when two persons wage a contest, as was staged in this case, for the command of the car. Disaster is to be anticipated. The result proved the danger of dual driving. The competent lady driver, authorized by appellant to operate the car, may have brought the machine safely to the right side of the road if the appellant had not interfered; at least, the machine and the party would have been in no worse situation. Admitting that she would have run the car into the embankment on the left side of the road, the automobile could not have left the highway. The danger of collision with the car coming from the other direction was not imminent. That car was coming up grade and was distant three hundred feet. That there was no excuse for the appellant's conduct, that the ap-

370

pellant was grossly negligent, and that his gross negligence caused the accident, the jury were warranted in finding from the evidence submitted to them.

The judgment should be, and it is, affirmed.

MAIN, PARKER, and FRENCH, JJ., concur.